HASKINS, J.

STANDARD OF REVIEW

Questions of law are entitled to de novo review, i.e., a plenary, independent, and *315 non-deferential re-examination of the Hearing Officer’s findings and the District Court’s legal rulings. This Court must determine whether there is sufficient evidence from the record before the Hearing Officer to support the District Court’s decision. Cherokee Nation v. O’Leary, SC-2006-13 & 14.

SCOPE OF REVIEW

Review by this Court is limited to the record made before the Hearing Officer. Title 51 CNCA, Chapter 10 § 1027; Carter v. the Cherokee Nation Gaming Commission, JAT 2003-14 (“Our review is restricted to the record made and considered by the Gaming Commission and we must give deference to the administrative expertise of the Commission. We may not set aside or reverse a decision of the Commission unless it is arbitrary and capricious, unsupported by substantial evidence or contrary to law”, (citing Title 4 CNCA 1994 § 19(c)).
This Court does not re-weigh the evidence, but is constrained to examine the record made before the Hearing Officer, and determine whether there is any competent evidence to support his decision. If such evidence exists, the Hearing Officer’s ruling must be affirmed. In Re: Bush, JAT 2000-05D, at page 3.

FACTUAL AND PROCEDURAL HISTORY

1. In 2008, Appellant Roy Hannaford was hired by Cherokee Nation Industries (hereafter “CNI”) to serve as the Executive Vice-President of its construction division. In that position, Hannaford was charged with managing and recruiting outside clientele.
2. CNI is a tribally owned organization that encompasses numerous different businesses that it operates and oversees. Among those businesses was the now defunct construction services division. Before the hiring of Hannaford, CNI construction projects were mostly in-house tribal projects that, for one reason or another, were generally not profitable. In an effort to move into the public sector and start turning a profit for CNI the construction services division hired Hannaford who had a 35 year history and background in the construction business.
3. One of the first projects Hannaford bid on behalf of CNI was known as the Bentley Park (hereafter “BP”) project in Bixby, Oklahoma. This was a $5,000,000,00 softball/soccer athletic complex that if completed on time and in a proper fashion, would net CNI a profit of more than $500,000.00. It was hoped that this project would give CNI construction services a public face, a good reputation in the construction field, and lead to further work and profit. The BP project under Hannaford did not go well.
4. On August 11, 2009, after massive cost overruns and threatened legal action by the City of Bixby, Roy Hannaford was suspended from his position as Executive Vice President of CNI’s construction division. Bryan Collins, CEO of CNI, called Hannaford into his office and told Hannaford that he was being terminated. He asked that Hannaford sign a form voluntarily resigning his position. Hannaford was required to immediately return his employee badge, his laptop computer, his company-issued automobile, and he was escorted off the premises.
5. On September 11, 2009, Hannaford was afforded a Pre-Termination *316 Hearing by Jennie Lynn Morton. Following that hearing and on that same day, Hannaford was fired by Bryan Collins. Appellant Roy Han-naford was terminated from his employment due to allegations of gross mismanagement of the BP project and for Hannaford’s misconduct as Executive Vice President.
6. Hannaford administratively appealed his termination. His appeal was heard by Administrative Law Judge (“Hearing Officer”) Steven Gray on February 4-5, 2010. Nine (9) witnesses testified before the Hearing Officer, including Roy Hannaford. The administrative record reflects that Hannaford’s employment was terminated for a number of reasons, in addition to those previously cited by Collins. Reasons for Hanna-ford’s termination relate to mismanagement of the BP project and its impact on the construction services division and CNI generally; others have to do with specific claims related to Hannaford’s conduct and dishonesty. The Hearing Officer heard testimony that as a result of Hanna-ford’s lack of supervision and other conduct violations the BP project became a disaster. Instead of a profit of half a million dollars, the BP project resulted in a $1.4 million loss to CNI and ultimately collapsed and closed the construction services division, CNI introduced evidence that Hannaford failed to supervise the BP job site, consumed alcohol during work hours, continued to use his company vehicle to go to a bar in Tulsa against the directives of his CEO, was insubordinate and deceitful to the CEO, signed contracts that were far above his authority, and on at least two occasions used workers from the BP project site to work on his personal residence.
It was not disputed that outside of the BP project, Hannaford had turned the consistently unprofitable construction division of CNI into a profitable enterprise. In eighteen months, Hanna-ford generated net profit for CNI of three to four million dollars and solicited approximately forty million dollars in business. On March 9, 2010, the Hearing Officer issued its decision upholding Hannaford’s termination. The Hearing Officer concluded that “the negligence of Roy Hannaford in failing to properly supervise and mange [sic] the construction contract with the City of Bixby constituted a major violation of Cherokee Nation Industries Policy No. COR-HR-110-80—‘Failure to act in away [sic] which furthers the business activities of the company The Hearing Officer also concluded that the “magnitude of the loss” justified CNI’s disregard of the disciplinary process guaranteed to employees of the Cherokee Nation generally and CNI specifically.
7. Roy Hannaford thereafter appealed to the District Court. Again his termination was upheld. The District Court’s Order was filed on December 7, 2010.

REVIEW

These issues are properly before this Court pursuant to Article VIII, Section 4 of the Constitution of the Cherokee Nation and Title 51 Cherokee Nation Code Annotated § 1025.

ISSUES UPON APPEAL

The Court has reviewed the findings and conclusions of the District Court in light of the record from the employee administrative appeal hearing and considered the *317 briefs of counsel. Appellant Hannaford lists seven (7) assignments of error: 1). That CNI terminated Hannaford without a pre-termination hearing, in violation of his contractual, statutory, and constitutional due process rights; 2). That Hannaford was terminated without a four-step progressive disciplinary process, in violation of his contractual, statutory, and constitutional due process rights; 3). That CNI’s termination of Hannaford “for cause” is unsupported by the evidence and the law and is in violation of Hannaford’s contractual, statutory, and constitutional due process rights; 4). That Hannaford’s termination was deemed to be “for cause” in spite of the final order of a tribunal of another sovereignty determining that CNI had failed to offer sufficient evidence to prove that Hannaford was terminated for cause; 5). That CNI and Its administrative law judge imposed the burden of proof upon Hannaford, to prove that the was not terminated for came, in violation of Han-naford’s constitutional rights; 6). That CNI did not provide a fair and impartial tribunal; and 7). That CNI, a subsidiary of the Cherokee Nation Executive Branch, made an employment decision based upon the directive of the Legislative Branch, in violation of Cherokee Nation constitutional and case law forbidding same.

ANALYSIS

The Court, having reviewed the entire record in this appeal as defined by Title 51 CNCA § 1018, finds that the sole issue raised upon appeal by Appellant Hanna-ford that this Court shall address is Appellant’s Fifth Claim, i.e. that the Hearing Officer, employing CNI policy (COR-HR 110-150), unconstitutionally shifted the burden of Proof to Hannaford.
The Cherokee people, through adoption of their Constitutions, have a sound history of extending to employees of the Cherokee Nation a system of protections affording Due Process rights. These rights include policies and procedures of discipline, termination, a right of hearing before an Administrative Hearing Officer, a right to appeal to the District Court of the Cherokee Nation, and a Constitutional right of appeal to this Court. Constitution of the Cherokee Nation (1999), Article XII; Cherokee Nation Human Resource Policy, Title 51 CNCA § 1001 et seq.; In Re: The Termination of William Bush, JAT 2000-05D; Watkins v. Cherokee Nation, et al., JAT 2002-01; Cantrell v. Cherokee Nation, JAT 1997-01; Looney v. Cherokee Nation Bingo Outpost, JAT 1996-05; Standingwater v. Cherokee Nation Bingo Outpost, JAT 1995-12.
The Tribal Council of the Cherokee Nation has the Constitutional authority and the duty to adopt rules and procedures for an employee’s right of appeal before this Court. The Council further has the general power to enact laws for the good of the Nation. Cherokee Nation Constitution, Article V, Section 7.
This Court in McCoy v. Cherokee Nation of Oklahoma, JAT 2000-06, when interpreting Article XII of the 1975 Constitution of the Cherokee Nation, determined that an employee of the Cherokee Nation who has served in a position at least one (1) year acquires a property right which “guarantees the continued employment of employees except for cause”. Appellant Hannaford, as a member of the Cherokee Nation is afforded the protections of Article II of the Cherokee Nation’s 1999 Constitution, and as an employee of the Cherokee Nation who served in an employment position for more than one (1) year has a protected property right, and cannot be terminated except for cause, (emphasis added) McCoy, id-.; In re: The Termination of William Bush, JAT 2001-09.

*318
OPINION

This Court finds that there is sufficient evidence from the record before the Hearing Officer to affirm the District Court’s Order as to Appellant Hannaford’s Issues Upon Appeal numbered 1, 2, 3, 4, 6 & 7. In any case in which this Court determines that no reversible error of law appears, and the findings of fact and conclusions of law of the Trial Court adequately explain its decision, or the Trial Court did not abuse its discretion, and the Trial Court’s findings are supported by the record before the Hearing Officer, this Court may affirm by an opinion citing this rule and attach a copy of the Trial Court’s final order. The Trial Court directly addressed each issue, which is supported by the record before the Hearing Officer. The Trial Court’s Order as to Appellant Hannaford’s issues numbered 1-6 & 7, is sufficiently supported by the record and adequately explains its rulings. The District Court’s Order, filed December 7, 2010, is attached hereto and made part of this opinion.
Hannaford’s Constitutional Challenge. Appellant Hannaford’s fifth claim asserts that CNI policy (COR-HR 110— 150) and the Hearing Officer unconstitutionally shifted the burden of proof upon Hannaford, a Cherokee Citizen who had been an employee for at least one (1) year at the time of his discharge, to prove that the was not terminated for cause. This issue has merit and requires close analysis.
This Court recently found a provision similar to COR-HR 110-150 to be unconstitutional, see Cherokee Nation Entertainment LLC v. McInerney, SC-2010-20, 10 Am. Tribal Law 300, 2011 WL 8843908 (April 5, 2011) (interpreting Cherokee Nation Entertainment Corporate Employee Services Policy & Procedure, No. CR-ES941). The Court in Melnemey concluded that such policy impermissibly placed the burden of proof upon a terminated CNE employee (who had been an employee for at least one (1) year at the time of discharge), to establish that the employee’s termination was not for cause. This Court found such a shift of the burden of proof to be contrary to basic tenants of due Process. In the Melnemey opinion, this Court also found that the EARP Hearing Officer erred as a matter of law when he concluded that the Business Record Exception to the prohibition against hearsay evidence under Title 12 O.S. § 2803(6) or Rule 803(6) of the Federal Rules of Evidence applied.
We find Melnemey to be distinguishable from the case at bar. The sole basis for Melnemey’s termination was her failed drug test. Once the drug test was thrown out by the district court there was no other evidence of cause in the record to support her termination. This Court in Melnemey closely examined the record made before the Hearing Officer to determine whether there was any competent evidence to support the Hearing Officer’s decision. There was not and the district court was affirmed.
In contrast, the Hannaford record, in its entirety, from the appeal before the Administrative Hearing Officer, contains sufficient competent evidence of Hannaford’s misconduct and behavior which violate the policies of CNI (including CNI COR-HR 110-080 STANDARDS of CONDUCT) to support his dismissal. The extensive Han-naford record includes the testimony of several witnesses who testified under oath as to Hannaford’s conduct, and were subject to cross-examination. The District Court properly concluded that Hannaford was afforded sufficient due process and, unlike that in Melnemey, overcame the improper shifting of the burden of proof. While not perfect, Hannaford was afforded Due Process.
*319 Furthermore, this Court’s Opinion in Mdnerney was released April 5, 2011, some four (4) months after the record was fully developed in the case at bar. This Court acknowledges that the Hannaford case was “pending” when the Mdnerney opinion was released; however, this Court declines to find that principles of retroac-tivity should apply to pending proceedings where the record is complete prior to release of this Court’s pronouncement of a constitutional interpretation of law or policy-
Therefore, under the circumstances of this case, we conclude that the trial court did not abuse its discretion in its finding that the Hearing Officer’s imposition of the burden of proof upon Hannaford to prove that he was not terminated for cause was not improper. There is sufficient evidence in the record before the Hearing Officer to justify Hannaford’s immediate termination. For these reasons, the District Court’s Order is affirmed.
This Court established a bright line rule Mdnerney which apply from the date of its pronouncement—protected Cherokee citizens are entitled to immediate and full disclosure of all reasons for termination and the burden of production and persuasion rests with the Cherokee Nation. Inherent in the concept of Due Process is that correct procedures and proper burdens of proof be imposed. An employee policy which improperly shifts the burden of proof to an employee who has vested property rights in continued employment is contrary to basic tenants of Due Process.
We AFFIRM,
CONCUR: DARELL R. MATLOCK, JR., Chief Justice, TROY WAYWE POTEETE, Justice.
SPECIALLY CONCURRING: DARRELL DOWTY, Justice.
Justice JAMES G. WILCOXEN took no part in the consideration or decision of this case.